# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| HERMON SHELTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case no. 4:06cv1583 TCM |
| | ) | |
| DAVE DORMIRE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Hermon Shelton, a Missouri prisoner serving a life sentence without the possibility of probation or parole, for federal habeas corpus relief is before the undersigned Magistrate Judge for a final disposition pursuant to the parties' written consent. See 28 U.S.C. § 636(c).

## Background

Following a three-day jury trial in April 2002, Hermon Shelton ("Petitioner") was found guilty by a jury of one count of first degree murder, two counts of first degree robbery, and three counts of armed criminal action. (Resp. Ex. 86-91.) The evidence presented at that trial was later summarized by the state appellate court[1] as follows.

> On September 8, 2000, Arthell Harris (Harris), a drug dealer, was driving his fiancee's car by the home of [Petitioner's] girlfriend. Harris stopped to speak with Ernest Ming (Ming), one of Harris's customers who was at the house with [Petitioner]. Ming and [Petitioner] got into the car with

---

[1]The quoted summary appears in the state appellate court's decision on Petitioner's post-conviction appeal.

Harris, and Harris drove off, eventually arriving at Ridgetop Apartments (Ridgetop). Around the same time, Jackie Mayweather (Mayweather) and Bobbie Smith (Smith) also arrived at Ridgetop to visit Mayweather's aunt. Mayweather saw a friend of his, Terry Thomas (Thomas), standing on a second floor balcony. Mayweather and Smith went up to Thomas to talk with him and share some beer that they had bought. While [Petitioner], Harris, and Ming were about to leave the parking lot, [Petitioner] said he saw a guy who owed him money and that, if he did not get the money from him, he was going to punch him in the face.

Ming told Harris to stop the car, which he did, and Ming and [Petitioner] got out, crossed the parking lot, and went up to the second floor balcony where Thomas, Mayweather, and Smith were standing. [Petitioner] got out a chrome handgun, and Ming said, "This is a robbery." Ming quickly patted down Thomas, Mayweather, and Smith, at which point Mayweather and Smith tried to jump over the balcony railing. They both got tangled up, and Ming grabbed Mayweather. Smith made it over the railing, fell to the lower level, and ran away. Ming told Thomas and Mayweather to take off their jewelry. Thomas replied, "[I]t ain't going down like this." Mayweather gave Ming a watch and two bracelets and Ming searched his pockets. Mayweather then jumped from the balcony and ran away. [Petitioner] then shot Thomas twice in the back, killing him. Mayweather and Smith both heard the gunshots.

[Petitioner] and Ming ran down to the parking lot and got into the car Harris was driving, with Ming in the front passenger seat and [Petitioner] in the back seat. [Petitioner] put the gun to the back of Harris's neck and told him to "drive this motherf---er and get the f--- away[.]" Harris drove off. After Harris drove off, Mayweather and Smith returned to the balcony and saw Thomas.

While driving, Harris saw a bracelet and some chains in Ming's hands. Ming said that after the two guys had jumped off the balcony, he had grabbed the other guy, i.e., Thomas, who tried to pull Ming in front of the barrel of the gun. Ming said he had turned him around, and the two struggled, when [Petitioner] "hit" – by which he meant "shot" – the other guy. [Petitioner] said, "I hit him four times." Harris returned to the home of [Petitioner's] girlfriend. [Petitioner] told Harris he was sorry about using the gun on him, but that he wanted to get out of there.

Three weeks later, police found the get-away car in a Wal-Mart parking lot. Mayweather and Smith both identified Ming[2] and [Petitioner] in photo lineups, and Mayweather identified [Petitioner] in a live lineup.[3]

(Resp. Ex. I at 204.)

In his defense, Petitioner presented two witnesses, Aleshia Pettigrew and her daughter, Shalonda, who both testified that he had been with Shalonda on the day of the murder and robberies at the relevant time. (Resp. Ex. A at 743-769.) He and Shalonda had become engaged that day. (Id. at 760-62.) Petitioner confirmed Shalonda's testimony about how he spent the day in question. (Id. at 793-804.) An alibi instruction was not given.

As noted above, the jury found Petitioner guilty. The trial court sentenced him, as a prior offender, to life without the possibility of probation or parole for the murder and twenty-five year terms of imprisonment on each of the remaining five counts, all to be served currently to the life sentence. (Resp. Ex. B at 115-17.)

Plaintiff appealed on four grounds. (Resp. Ex. C at 13-14.) Specifically, he argued that the trial court had (1) erred when overruling his motions to suppress identification and in admitting identification testimony because the pretrial identification procedures were suggestive and unreliable; (2) plainly erred in restricting the supplemental cross-examination of Mayweather to one question for which counsel was not permitted to lay a foundation, thereby violating this constitutional rights to confrontation of the witnesses against him, due

---

[2]Ming was convicted following a jury trial of one count of second degree murder, two counts of first degree robbery, and three counts of armed criminal action. See State v. Ming, 87 S.W.3d 887 (Mo. Ct. App. 2002) (per curiam).

[3]Additional facts shall be set forth as they relate to specific issues raised by Petitioner.

process, and a fair trial; (3) erred by admitting the hearsay testimony of Harris as to statements made by Ming in the car as they drove away from the crime scene; and (4) erred in overruling his objection to the admission of testimony from Thomas' mother identifying her son in a family portrait as the murder victim because it was irrelevant, immaterial, and prejudicial.  (Id.)

Each ground was rejected.  (Resp. Ex. E.)  Addressing Petitioner's first argument, the state appellate court found:

> [Petitioner's] only basis for asserting that the photographic and live lineups were unduly suggestive is that, in both, [Petitioner] was the only lighter-skinned African American male capable of wearing braids or a ponytail.  First, we disagree with his characterization of the lineups.  There is another man of similar complexion to [Petitioner] in the photographic lineup and two others that appear to have some type of braiding in their hair.  Likewise, in the photograph of the live lineup, there are two men of lighter complexion than [Petitioner] and another man with hair long enough to braid or put in a ponytail.  Moreover, even if [Petitioner's] hairstyle and skin tone were distinctive, that would not necessarily establish undue suggestiveness. . . .

> The totality of the circumstances also demonstrates that Mayweather's and Smith's identification were reliable. . . .  Here, each witness accurately described [Petitioner] and had some opportunity to view him during the crime; their testimony reveals that however short that opportunity was, they were paying close attention.  Moreover, Mayweather initially assessed the certainty of his photographic identification as an 8 on a scale of 1 to 10 and, after viewing the live lineup, had "no doubt" that [Petitioner] was the gunman.  Smith was absolutely certain of his identification.

(Id. at 2-3.)

The court found no plain error in the trial court limiting the supplemental cross-examination of counsel of Mayweather to one question – whether he had changed his mind

about his identification of Petitioner – while not allowing counsel to lay a foundation for that query.  (<u>Id.</u> at 3-4.)  Moreover, trial counsel had accepted without objection the trial court's ruling that (a) she could question Shalonda about her allegations that Mayweather had approached her the day before in the hallway outside the courtroom and told her he was no longer sure of his identification of Petitioner as the gunman and (b) she could question Mayweather about whether he was as sure today as he was the day before that Petitioner had committed the crime.  (<u>Id.</u> at 4.)

Petitioner's third argument was unavailing because any error in admitting Ming's statements was harmless, Harris also having testified that Petitioner himself had said he had "hit" the victim four times.  (<u>Id.</u> at 6.)  This admission plus the other identifications of him as the gunman rendered Ming's statements duplicative or cumulative, at worst.  (<u>Id.</u>)  Petitioner's fourth ground was without merit because the brief testimony was seemingly without inappropriate emotional displays and was not so prejudicial as to deny Petitioner a fair trial.  (<u>Id.</u> at 6-7.)

Petitioner next sought post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, raising ten grounds of ineffective assistance of trial counsel or appellate counsel.  (Resp. Ex. F at 6-16.)  His motion, amended by counsel, raised two grounds.  (<u>Id.</u> at 17-35.)  He was denied the effective assistance of trial counsel when (1) counsel failed to object to the absence of an alibi instruction and (2) failed to call Detective Scott as a witness to testify that other witnesses to the incident initially identified someone other than Petitioner as being

involved.  (Id. at 17, 19.)  Relief was denied without an evidentiary hearing.  The motion court found, in relevant part, as follows.

> Though [Petitioner's] trial counsel did not request an alibi instruction, it did submit five jury instructions pertaining to specific elements the state must satisfy in all five counts charged.  Even though trial counsel did call Aleshia Pettigrew and Shalonda Pettigrew as alibi witnesses, they were not credible.  It is not ineffective assistance of counsel to fail to request an instruction that is not warranted by the evidence.  Furthermore, the prosecution had a very strong case in the form of two solid identifications and the testimony of co-defendant Harris.  Even though [Petitioner] himself testified, his testimony was not credible.  The relative strength or weakness of the prosecution's case is significant in determining whether any deficiencies in trial counsel's performance was prejudicial.  As a result, [Petitioner] was in no way prejudiced by trial counsel's failure to ask for an alibi instruction.

> The other point raised by [Petitioner] in his Amended Motion pertains to trial counsel not calling Martise Scott as a witness.  As addressed in an earlier point, trial counsel was not ineffective for failing to call Scott as a witness.  There has been no testimony from any witnesses indicating anyone other than [Petitioner] was ever picked out of a photo lineup.  Nowhere in the trial transcript or the depositions of Mayweather or Smith do they pick anyone other than [Petitioner] from a photo lineup.  In fact, no one other than [Petitioner] is picked out by anybody in any photo lineup.  The selection of witnesses and the decision not to call additional witnesses are matters of trial strategy.  Strategic choices made after thorough investigation are virtually unchallengeable.

(Id. at 67-68.)

Plaintiff appealed on the same two grounds, both of which were rejected by the appellate court.  (Resp. Exs. G, I.)  That court also found no prejudice resulted from trial counsel's failure to submit an alibi instruction, noting that the jury would have returned a "not guilty" verdict if they had believed Petitioner's alibi.  (Resp. Ex. I at 5-7.)  Nor did the appellate court find any prejudice from trial counsel's failure to call Scott as a witness.  (Id.

at 8-9.)  According to Petitioner, Scott would have testified that Terrell Brown's name was mentioned by someone in a crowd during the early stages of his investigation.  (<u>Id.</u> at 8.)  His investigation initially focused on Brown, but he later cleared him of any involvement.  (<u>Id.</u>)  The appellate court found that Scott's testimony implicating and then clearing Brown (a) would not have provided Petitioner with a viable defense and (b) might be improper given that there was no evidence "other than the crowd's tossing about of Brown's name, to believe Brown was involved."  (<u>Id.</u> at 8-9.)

Petitioner now seeks federal habeas relief on fifteen grounds from his conviction and sentence.  He argues that the trial court (1) erred in admitting suggestive and unreliable identification testimony; (2) plainly erred in restricting the supplemental cross-examination of Mayweather; (3) erred in admitting Harris's hearsay testimony; and (4) erred in overruling his objection to the testimony of Thomas's mother identifying her son in a family portrait as the murder victim.  Petitioner further argues that his trial counsel was ineffective for failing to (5) object to the trial court asking the jurors if they wanted to move their cars during deliberation, a question that amounted to "hammering" the jurors; (6) call Scott as a witness; (7) call Tammy Taylor, Harris's ex-girlfriend, as a witness to testify about Harris's and another man's participation in the crimes; and (8) investigate accounts of the murder from eyewitnesses who had been present at the apartment complex and who had given their names to police.  Appellate counsel was ineffective for failing to argue that (9) the trial court had erred in allowing the use of a transcript of a statement Harris gave to police and (10) the trial court had erred in excluding testimony about that other man, named "Monster," suspected

in the crimes. Trial counsel was additionally ineffective for not (11) objecting to the State striking eight jurors because of their race and (12) objecting to the prosecutor's comments in voir dire that Harris had pled guilty to the crimes with which Petitioner had also been charged. Appellate counsel was ineffective for (13) failing to properly "federalize" the first three points in the direct appeal. And, trial counsel was ineffective for failing to (14) investigate Harris and discover that he had made a deal with prosecutors in exchange for testifying against Petitioner, and (15) request an alibi instruction. These last eleven grounds, five through fifteen, inclusive, were presented in Petitioner's pro se Rule 29.15 motion.

Noting that only two of the eleven claims of ineffective assistance of trial counsel or appellate counsel were raised in Petitioner's post-conviction appeal, Respondent contends that the omitted claims are procedurally barred. Respondent further argues that the claims that were raised on appeal, and rejected, are without merit. Petitioner counters that Respondent's response should be stricken because it was filed untimely.[4]

### Discussion

Procedural Default. It is undisputed that Grounds 5, 7, 8, 9, 10, 11, 12, 13, and 14 – allegations of ineffective assistance of trial counsel or appellate counsel – were not raised in Petitioner's amended Rule 29.15 motion or in the subsequent appeal. Respondent argues that this omission resulted in a procedural default. Petitioner challenges the late filing of Respondent's pleading, but not its allegations of procedural default.

---

[4]The response was due on Friday, December 15, 2006, and was filed the following Monday. The Court will not strike the pleading for this minor, unprejudicial delay.

"Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted." **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007); <u>accord</u> **Echols v. Kemna**, 511 F.3d 783, 785 (8th Cir. 2007) ("If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." (internal quotations omitted)). Thus, claims not presented in a Rule 29.15 motion or in the appeal from a denial of such motion are procedurally barred. <u>See</u> **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in Rule 29.15 motion or included in appeal are procedurally defaulted); **Osborne v. Purkett** , 411 F.3d 911, 919 (8th Cir. 2005) (claim raised in Rule 29.15 motion but not presented on appeal was procedurally barred); **Lyons v. Luebbers**, 403 F.3d 585, 593 (8th Cir. 2005) ("A section 2254 applicant's failure to raise a claim in state post-conviction proceedings results in procedural default of that claim.").

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77; <u>accord</u> **Barnett v. Roper**, 541 F.3d 804, 808 (8th Cir. 2008), <u>cert. denied</u>, 130 S.Ct. 63 (2009); **Greer v. Minn.**, 493 F.3d 952, 957 (8th Cir. 2007). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Id.** (quoting Murray v. Carrier, 477 U.S.

478, 488 (1986)).  There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).  What has been established is that a "fail[ure] to raise a claim despite recognizing it, does not constitute cause for a procedural default."  **Murray**, 477 U.S. at 486.

Petitioner raised in his pro se Rule 29.15 motion the same claims of ineffective assistance of trial counsel and appellate counsel he raises in this proceeding.  In his post-conviction appeal, however, he raised only his claims that trial counsel was ineffective for not calling Scott as a witness and for not requesting an alibi instruction.  Clearly, the basis for his § 2254 claims was available to post-conviction counsel; however, "[i]neffective assistance of postconviction counsel is not a cause for procedural default."  **Oglesby v. Bowersox**, 592 F.3d 922, 926 (8th Cir. 2010); accord **Zeitvogel v. Delo**, 84 F.3d 276, 279 (8th Cir. 1996).  In **Interiano**, the Eighth Circuit did not excuse a default caused by postconviction counsel's failure to raise claims in an amended Rule 29.15 motion or in the appeal from the denial of that motion which had been presented in the petitioner's pro se motion.  471 F.3d at 857.  Similarly, the omission of the nine grounds from Petitioner's amended motion and from the appeal are not to be excused.

Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice.  See **Schawitsch v. Burt**, 491 F.3d 798, 804 (8th Cir. 2007); **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to do so will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005); accord **Embrey v. Hershberger**, 131 F.3d 739, 741 (8th Cir. 1997) (en banc). "[I]n noncapital cases the concept of actual innocence is 'easy to grasp,' because 'it simply means the person didn't commit the crime.'" **Id.** (quoting United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1997)). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne**, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such exists.

For the foregoing reasons, the Court finds that Grounds 5, 7, 8, 9, 10, 11, 12, 13, and 14 are procedurally barred. Grounds 1, 2, 3, 4, 6, and 15 are not procedurally barred, but are, for the following reasons, without merit.

Ground One: Identification. Petitioner argues that the trial counsel erred in overruling his motion to suppress his identification from a "highly suggestive" lineup because he was the only individual placed in either the photographic lineup or the live lineup who had any of the features the State's witnesses were looking for, i.e., a height of 5 feet 8 inches, a weight of 200 pounds, a light complexion, and braids or a ponytail.

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts only if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)). "'[A] decision is "contrary to" federal law . . . if a state court has arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if it confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" **Id.** (quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original). "'A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** (quoting Davis, 423 F.3d at 874) (alteration in original).

Smith and Mayweather both identified Petitioner in a photographic lineup as the man who had robbed them at gunpoint. They were not told that the man being investigated for the crimes was in the lineup and were asked only if they saw someone they recognized. (Resp. Ex. A at 358, 364, 432-33, 663, 666-67, 672.) Before the lineup, Mayweather described the gunman as a heavy-set black male in his 20s, a little bit shorter than 5 feet 10 inches, weighing approximately 250 pounds, with a complexion slightly lighter than his own, and with long braids. (Id. at 340.) Smith had described the gunman as a "healthy guy, kind of chunky," in his 20s, about 5 feet 7 inches tall, weighing between 230 and 250 pounds, and having "like ponytails" down his back. (Id. at 418-19.) They identified Petitioner in the photographic lineup and at trial as the gunman, and they testified that they were certain of their identification. Their identification and the suggestiveness of the lineups were reviewed and ruled on by the state trial court and appellate court.

"A conviction based on eyewitness identification at trial will be set aside only when pre-trial identification procedures were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm." **Trevino v. Dahm**, 2 F.3d 829, 833 (8th Cir. 1993); accord **Palmer v. Clarke**, 408 F.3d 423, 435 (8th Cir. 2005) (applying standard to photographic lineup procedure). "'Reliability is the linchpin in determining the admissibility of identification testimony[.]'" **United States v. Davis**, 103 F.3d 660, 669 (8th Cir. 1996) (quoting Manson v. Brathwaite, 432 U.S. 98, 113 (1977)). "In determining whether the identification was reliable, a court must consider: (1) the opportunity of the witness to view

the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the photographic display; and (5) the length of time between the crime and the photographic display." **Palmer**, 408 F.3d at 435 (citing <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972)).  "Even if a photographic identification procedure is impermissibly suggestive, however, the 'central question' regarding eyewitness identification at trial is 'whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pre-trial identification techniques.'" **Id.** (quoting <u>Trevino</u>, 2 F.3d at 833).  And, "[w]hether an identification was reliable is a question of fact," the state courts' determination of which is to be accorded "a high measure of deference." **Mack v. Caspari**, 92 F.3d 637, 642 (8th Cir.1996).

Mayweather and Smith had ample opportunity to observe Petitioner as he stood and pointed a gun at them on the balcony.  Mayweather had additional time to observe Petitioner as Ming patted him down and waited for Mayweather to take off his watch and bracelets. <u>See</u> **Collins v. Dormire**, 240 F.3d 724, 727-28 (8th Cir. 2001) (finding eyewitness's identification of defendant to be reliable, eyewitness had stood five to six feet away from defendant for a few minutes); **Mack**, 92 F.3d at 642 (finding identification by victim reliable, although victim had been drinking and using amphetamines and the assault was outside in the predawn hours, the defendant had been only two feet away from defendant at one point and victim had confronted defendant at trial only six months after line-up).   Both

Mayweather and Smith gave a fairly accurate description of Petitioner, and both were very certain they were identifying the gunman when they selected Petitioner from the photographic and live lineups. Moreover, the three week interval between the crimes and the lineups did not taint the identifications. See **Id.** at 643 (six month gap did not make photo lineup suggestive).

"Under [the foregoing] circumstances, any remaining concerns about the suggestiveness of the identification procedure or the reliability of the out-of-court identification were for the jury to resolve.'" **Id.** (quoting <u>Dodd v. Nix</u>, 48 F.3d 1071, 1075 (8th Cir. 1995)). The jury resolved the identification issue adversely to Petitioner, and the state courts' decisions also rejecting his argument were not contrary to, or an unreasonable application of, clearly established federal law and were not based on an unreasonable determination of the facts in light of the evidence.

<u>Ground Two: Cross-Examination.</u> Petitioner next challenges the trial court's imposition of restrictions on trial counsel's cross-examination of Mayweather about whether he had changed his mind about his identification of Petitioner as the gunman, arguing that trial counsel should have been permitted to lay a foundation for questioning Mayweather about allegedly recanting his identification of Petitioner as the gunman. Trial counsel having

failed to object to any limitation, the state appellate court Petitioner's claim for plain error[5] and found none.

An essential purpose of the Confrontation Clause "'is *to secure for the opponent the opportunity of cross-examination*.'" **Delaware v. Van Arsdall**, 475 U.S. 673, 679 (1986) (quoting <u>Davis v. Alaska</u>, 415 U.S. 308, 315 (1974)). "[O]ne goal of effective cross-examination is to impeach the credibility of opposing witnesses." **Newton v. Kemna**, 354 F.3d 776, 781 (8th Cir. 2004). Thus, "'the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.'" **Id.** (quoting <u>Davis</u>, 415 U.S. at 316). "The Supreme Court has emphasized that 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" **Id.** (quoting <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985) (per curiam)).

Although the focus of the Confrontation Clause is on individual witnesses, **Van Arsdall**, 475 U.S. at 680, Confrontation Clause violations are subject to a harmless-error analysis, **id.** at 684. When deciding whether there was such error, the Court examines the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness

---

[5]There is a split in the Eighth Circuit "about whether plain error review 'cures' the procedural default." **Shelton v. Purkett**, 563 F.3d 404, 408 (8th Cir. 2009). The Court will use a cautious approach and review the ground on its merits, mindful of the deferential review mandated by § 2254(d).

on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.  **Id.**

Trial counsel was permitted to ask Mayweather if he had changed his mind about identifying Petitioner.  (Resp. Ex. A at 646.)  After he replied that he was "one hundred percent certain," counsel was allowed to call Shalonda Pettigrew and question her about the remarks allegedly made to her by Mayweather outside the courtroom.  (Id. at 768-69.)  Thus, Petitioner was allowed to question Mayweather about whether he had recanted his identification of Petitioner and was allowed to elicit impeachment testimony from Shalonda that Mayweather had indicated to her that he was no longer sure about his identification.  Although the sought-after information was not elicited in the manner Petitioner wished, the jury had before it the same testimony by Shalonda that would have been elicited had trial counsel been permitted to lay the desired foundation.  Ground two is without merit.

Ground Three: Hearsay Testimony.  Petitioner argues that his constitutional rights were violated when Harris was permitted to testify about statements made by Ming when he and Petitioner returned to the car following the incident.  The state appellate court affirmed the admission of such statements, finding that (i) they were permitted under the excited utterance exception to the hearsay rule and (ii) the admission was harmless because Harris also testified to similar, inculpatory statements by Petitioner.

"[I]n habeas corpus proceedings, it is not within [the federal courts'] province to 'reexamine state-court determinations on state-law questions.'"  **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)).

See also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court.").  Consequently, this Court lacks authority to review the state court's decision that Harris's hearsay testimony was admissible under the excited utterance exception.  See **Middleton v. Roper**, 455 F.3d 838, 855 (8th Cir. 2006).

This Court may review a Confrontation Clause challenge to such testimony if that challenge has been presented to the state courts.  "Before a state prisoner is entitled to federal habeas corpus relief, he first must exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court. . . .  To satisfy the 'fairly present' requirement, [Petitioner] must have 'refer[red] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in the Missouri state court.'"  **Id.** (third alteration in original).  Petitioner presented only his hearsay argument to the state courts; he made no reference at all to the Confrontation Clause.  Cf. **Id.** (finding that Confrontation Clause challenge raised in brief on direct appeal to state supreme court was fairly presented).  Therefore, any Confrontation Clause challenge is also procedurally barred.[6]

---

[6]Had Petitioner raised his Confrontation Clause argument before the state courts, the argument would nonetheless be without merit.  "'A violation of the Confrontation Clause is subject to harmless error analysis . . . .'"  **Middleton**, 455 F.3d at 857 (quoting Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999) (en banc)).  As noted by the state appellate court, Harris also testified about statements made by Petitioner when he too returned to the car.  These statements were similar to those by Ming, and, as did Ming's statements, described a chain of events that were also described by Mayweather and Smith.

Ground Four:  Thomas's Mother's Testimony.  Petitioner contends that the trial court erred by allowing Hallie Thomas, the mother of Terry Thomas, to identify him in a photograph of her son, his girlfriend, and their two children, such testimony being immaterial, irrelevant, and unduly prejudicial.  (See Resp. Ex. A at 327.)  Petitioner presented this to the state courts only as a state evidentiary error.

As noted above, "generally, 'a state court's evidentiary rulings that are based on state law do not implicate a criminal defendant's constitutional rights with respect to the sufficiency of the evidence and thus are not cognizable on habeas review.'"  **Sera v. Norris**, 400 F.3d 538, 547 n.8 (8th Cir. 2005) (quoting Weston v. Dormire, 272 F.3d 1109, 1113 (8th Cir.2001)).  Instead, such an evidentiary ruling can be the basis for federal habeas relief only when the ruling "'infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'"  **Id.** (quoting Clark v. Groose, 16 F.3d 960, 963 (8th Cir.1994)).

Ms. Thomas testified that she was the mother of Terry Thomas, who was killed in September 2000 at the age of thirty years.  (Resp. Ex. A 326-27.)  She then identified him in a photograph with his girlfriend and two children.  (Id. at 327.)  She gave no further testimony.  In **Clark**, 16 F.3d at 963-64, the Eighth Circuit found no constitutional violation in the admission of testimony about another sex crime alleged to have been committed by the petitioner against a friend of the victim's stepmother and of testimony about his public drunkenness.  And, in **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998), the court found

that evidentiary rulings allowing testimony impeaching the credibility of a defense witness with the fact that her daughter had been indicted for tampering with physical evidence in connection with the case and testimony that the daughter, the girlfriend of both the petitioner and a man who was his intended target the night of the shooting, was in possession of a gun shortly after the shooting "[fell] far short of reaching" the level of a constitutional violation. If such rulings as these did not violate the petitioner's constitutional rights, the simple testimony of Ms. Thomas identifying her son in a family photograph clearly did not either.

Ground Six: Ineffective Assistance of Trial Counsel; Failure to Call Scott as a Witness. Petitioner's last two non-defaulted grounds challenge the effectiveness of his trial counsel. In ground six, he argues that trial counsel was ineffective for not calling Detective Scott to testify that witnesses to the robbery and shooting initially identified someone other than Petitioner as being involved.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (second alteration in original). "Only reasonable competence, the

sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish prejudice, a petitioner "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 534 F.3d 857, 866 (8th Cir. 2008) (quoting Strickland, 466 U.S. at 694); accord **Williams v. Norris**, 576 F.3d 850, 858 (8th Cir. 2009). "A reasonable probability is one sufficient to undermine confidence in the outcome." **Garcia v. Bertsch**, 470 F.3d 748, 754 (8th Cir. 2006) (internal quotations omitted); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001). The burden of showing a reasonable probability is the petitioner's. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001). Thus, if a petitioner has failed to show that, but for an allegedly deficient performance by his trial counsel, there is a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails. **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir. 2007).

There is no reasonable probability that the outcome of the trial would have been different had Scott testified that "witnesses to the incident identified someone other than [Petitioner] as being involved" in the robbery and murder and that the initial investigation focused on a Terrell Brown. (Resp. Ex. G at 30, 32.) Petitioner further alleged in his amended Rule 29.15 motion that Scott also would have testified that the police investigation "subsequently cleared Terrell Brown of any involvement in the charged offenses and that their investigation turned to [Petitioner]." (Resp. Ex. F at 50.)

Clearly, Petitioner cannot, and did not before the state courts, establish any prejudice as a result of trial counsel's failure to call a police detective to testify about a man suspected to be gunman in the early states of the investigation when he also would have testified that that man was eventually cleared and Petitioner replaced him as the chief suspect. See e.g.

**Helmig v. Kemna**, 461 F.3d 960, 967 (8th Cir. 2006) (rejecting ineffective assistance of trial counsel claim for failure to call witnesses based on state courts' findings that witnesses would not have provided defense); **Griffin v. Delo**, 33 F.3d 895, 900 (8th Cir. 1994) (rejecting ineffective assistance of trial counsel claim for failure to investigate defendant's alibi defense; failure did not result in "the omission of affirmative evidence that would have exculpated" petitioner).

Accordingly, Petitioner's first presented claim of ineffective assistance of trial counsel is unavailing, as is his next claim.

Ground Fifteen: Ineffective Assistance of Trial Counsel; Failure to Request an Alibi Instruction.   In his final, non-defaulted claim, Petitioner argues that trial counsel was ineffective for failing to request an alibi instruction based on the testimony of his fiancé, Shalonda Pettigrew, her mother, Aleshia Pettigrew, and himself.  Petitioner argues that this omission is particularly prejudicial because the case against him was not strong and the three alibi witnesses, including himself, were credible.

Petitioner's argument mischaracterizes the case against him.  Two victims of the robbery, Mayweather and Smith, identified him as the gunman.  Harris testified that Petitioner admitted shooting Thomas.  Although he, his fiancé, and her mother testified that he could not have been the gunman because he was with them, the jury clearly did not believe them because they returned a verdict of guilty against Petitioner.  Petitioner has failed to carry his burden of showing that there is a reasonable probability that he would not have been convicted had the jury received an alibi instruction.

## Conclusion

For the foregoing reasons, six of Petitioner's § 2254 claims are without merit and nine are procedurally barred. Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Hermon Shelton is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this  4th  day of March, 2010.